Argued September 10, affirmed September 22, 1965

## STATE OF OREGON *v.* YOST
### 405 P. 2d 851

*Oscar D. Howlett,* Portland, argued the cause and submitted a brief for appellant.

*James R. Carskadon, Jr.,* Deputy District Attorney, Oregon City, argued the cause for respondent. With

him on the brief was Roger Rook, District Attorney, Oregon City.

Before MCALLISTER, Chief Justice, and PERRY, DENECKE, LUSK and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore).

Upon trial the defendant was found guilty of burglarizing the Milwaukie Elks Club building located on McLoughlin Boulevard in Clackamas county. The building was equipped with a burglar alarm system which the defendant apparently tripped. The alarm sounded in the Milwaukie police station, resulting in the presence of several policemen at the scene in time for one of them to see the defendant come out of the building with a pry bar in his hand and three bottles of whiskey under his arm. He attempted to flee but was apprehended at the scene by the police officers. The director of the Oregon State Crime Detection Laboratory testified that the marks on a doorway which had been forced were made by the pry bar in the possession of the defendant. The Elks Club manager identified the whisky bottles as club property. The defendant offered no testimony.

Defendant's only assignment of error is that the trial court erred in restricting the cross-examination of one of the police officers.

A partial chronology of the events of trial is helpful to an understanding of the questions which resulted in the rulings assigned as error.

The first witness called was Thomas Reid of the Milwaukie Police Department. He testified that he arrived at the scene in response to the burglar alarm, saw signs of forcible entry, returned to his police car and radioed for assistance. Immediately thereafter

several other officers, including Officer Bernard Weisshaar, also of the Milwaukie Police Department, joined him. The various officers took up positions on different sides of the building. Reid first saw the defendant when he came running around a corner of the building with Officer Weisshaar in pursuit. Reid, Weisshaar, and one other officer converged on defendant and took him into custody. This was the substance of Reid's testimony on direct examination. On cross-examination Reid was asked whether he entered and inspected the building after the defendant was apprehended. When he stated that he had, the trial court permitted him, over the objection of the District Attorney, to be examined at some length concerning a part of the contents of the building—an issue irrelevant to the charge under which the defendant was being tried.[1]

The next witness called was Officer Weisshaar. On direct examination Officer Weisshaar testified that he was dispatched by radio to the scene and arrived in time to see the defendant come out of the building carrying the bottles and the pry bar. When the direct examination of Weisshaar was concluded court recessed for the lunch hour. The initial cross-examination after the recess consisted of having Weisshaar restate in more detail the facts concerning which he had testified on direct examination. Defense counsel then asked Weisshaar with whom he had talked outside of the courtroom during the lunch hour. He answered giving the names of three police officers, including the previous witness, Officer Reid. Defense counsel was permitted to pursue this line of questioning until he asked whether or not there had been any conversation

[1] Defense counsel developed through this witness that slot machines were present in the building.

about that part of the contents of the building concerning which he had previously questioned Officer Reid. At this point an objection made on the grounds of irrelevancy was sustained. Defense counsel went on to other matters, then came back to the noon hour conversations and there followed the questions eliciting the rulings which the defendant assigns as error:

"Q (By Mr. Howlett) Now, you talked downstairs with these officers, there was a conversation held, Officer Reid was doing most of the talking, was he?

"MR. GILROY: Your Honor, I object to the whole idea of this conversation in my office during the lunch hour. I don't see what he is getting at.

"THE COURT: I don't think it is relevant and beyond the scope. I will sustain the objection.

"MR. HOWLETT: May I ask if any conversation was held immediately outside of the courtroom before you went downstairs?

"MR. GILROY: I don't think that is any more relevant than any other conversation, your Honor.

"THE COURT: I don't see that it is relevant."

██ Most states where the question has been raised have held that it is proper cross-examination in a criminal case to inquire whether the witness has discussed the facts of the case with anyone, and if so with whom and under what circumstances. See cases collected in 35 ALR2d 1045 (1954). While this precise question has not been raised in Oregon in a criminal case, our adherence to this rule is indicated in *Stotts v. Wagner*, 135 Or 243, 246, 295 P 497 (1931) in which this court said, "it is always permissible to ask a witness whether he discussed the facts with any other person." This statement, interpreted within the bounds of reason, enunciates the proposition that questions concerning conversations with other witnesses are proper so long

as there is an indication that such inquiry may shed some light on the accuracy or credibility of the witness under examination. Yet while liberal and rigorous cross-examination is often warranted, it must have legitimate boundaries and this case is illustrative.

■ The witness Weisshaar had completed his direct testimony before the lunch hour. Nothing he said on cross-examination after the lunch hour conversations indicated any change of fact or emphasis or attitude on his part—thus demonstrating that whatever the conversations were they had not affected the witness' testimony. Further, defense counsel was permitted to cross-examine the witness at length on these conversations until he sought to bring out the same immaterial matter he had previously developed. The trial judge afforded the defense great latitude in cross-examination. He terminated the line of inquiry defense counsel was pursuing only when the questions put, viewed in the light of what had transpired, not only failed to disclose a proper purpose but affirmatively showed an attempt to spread irrelevancies on the record.

Judgment affirmed.